IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WALTER RAY BEASLEY, )
)
    Plaintiff, )
)
v. ) Civil Action No. 1:23-cv-1171 (RDA/WEF)
)
LARRY LEABOUGH, *et al.*, )
)
    Defendants. )
)

**MEMORANDUM OPINION**

    Walter Ray Beasley, a Virginia inmate proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that the original eight defendants[1] violated his constitutional rights while he was detained at the Riverside Regional Jail ("RRJ"), North Prince George, Virginia by not providing him with religious materials and religious services. Dkt. No. 1. On April 30, 2024, the Court screened his complaint, noted deficiencies, and granted Beasley leave to amend. On May 21, 2024, Beasley filed his amended complaint naming two defendants: Larry Leabough and Edward Blackwell. Dkt. No. 15. The amended complaint raised two claims:

1) Chaplain Edward Blackwell violated Plaintiff's rights "under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment Free Exercise Clause" by failing "to accommodate inmate Walter Ray Beasley with his religious based request for religious materials and literature as request[ed]. . . . [T]his failure to accommodate [Beasley's] religious request was a violation of his rights as protected by [RLUIPA] and the First Amendment. . . . Blackwell . . . failed to accommodate inmate Beasley religious exercise in a variety of different ways including discriminating against inmate Beasley for his faith belief and denying Beasley access to religious literature, denying the same opportunities for group worship that are granted to adherents of mainstream[] religio[ns].

---

[1] These eight defendants are Larry Leabough, Superintendent; Dennis Holmes, Assistant Superintendent; C. Armstrong, Assistant Superintendent; Tojuanna Mack, Major; Edward Blackwell, Chaplin; Mark Culver, Lieutenant; J. LaVine, Lieutenant; and Sgt. McKevin.

    Dates involved with claim as follows: Feb. 24, [2023] @ 2:45 pm,[2] Mar. 8, [2023] @ 9:47 am (Kiosk), Mar. 9, [2023] @ 2:09 pm (Kiosk),[3] Mar. 10, [2023] @ 7:43 am (Kiosk),[4] Mar. 25, [2023] @ 8:00 am (informal complaint),[5] April 20, [2023] @ 11:40 am (grievance #23-04-45664), April 21, [2023] @ 11:07 am (grievance #23-04-45664), May 5, [2023] @1:15 (informal complaint), May 5, [2023] @ 11:40 am (grievance),[6] June 7, [2023] @ 12:15 [am] (informal complaint),[7] June 13, [2023] @ 4:20 pm (informal complaint), July 7, [2023] @ 6:45 pm (informal complaint), Aug. 1, [2023] @ 4:25 pm (grievance 23-08-45691), Aug. 18, [2023] @ 8:46 am (grievance #23-08-45691)[8] . . . .

2) RRJ Superintendent Larry Leabough violated Beasley's "due process" and constitutional rights and religious rights under RLUIPA "for failing to provide a chaplain trained in Beasley['s] Faith. Beasley is a member of bona fide religious and . . . he's sincere in his belief. . . ." Leabough violated RLUIPA because he "failed to accommodate inmate Beasley religious exercise in a variety of different ways including discriminating against inmate Beasley for his faith belief and denying Beasley access to religious literature, denying the same opportunities for group worship that are granted to adherents of mainstream[] religio[ns]."[9]

The Defendants were served, and each filed separate motions to dismiss, supported by a brief. Dkt. Nos. 22, 23, 25, 26. On February 13, 2025, the Court advised Beasley of his right to respond in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and he has responded. Dkt. Nos. 35, 36. The Defendants filed a joint reply, Dkt. No. 37, and Beasley filed a reply thereto. Dkt. No. 40.[10] Accordingly, this matter is now ripe for disposition. For the reasons that follow, the

---

[2] The times (a.m. or p.m.) listed in Claim 1 may have been misread due to the small print. The exact time, however, is not material to the resolution of the motions to dismiss.

[3] Dkt. No. 1-5.

[4] Dkt. No. 1-7.

[5] Dkt. Nos. 1-3, 1-8.

[6] Dkt. No. 1-3.

[7] Dkt. Nos. 1-10, 1-12.

[8] Dkt. No. 1-13.

[9] Claim 2 also alleges that Leabough violated the RRJ's Handbook.

[10] Plaintiff has included several new factual allegations in his Reply that were neither in the original complaint or his amended complaint. Plaintiff, however, cannot amend his claim by raising new matters in a response to a motion. *See Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) ("[A] plaintiff may not amend her complaint via briefing." (citing

defendants' motions to dismiss shall be granted, and the amended complaint must be dismissed with prejudice.

I. STANDARD OF REVIEW

Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare

---

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va. 2015) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a [dispositive] motion . . . ." (cleaned up)). Plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *see S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519 (1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads *pro se* pleadings to raise the strongest arguments that they suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

## II. STATEMENT OF FACTS[11]

1.     RRJ detained Beasley from January 14, 2023, Dkt. No. 1 at 7, until February 6, 2025, when he was transferred to the Virginia Department of Corrections ("VDOC"). Dkt. No. 30.

2.     Defendant Blackwell posted a Memorandum in RRJ regarding Religious Services dated February 5, 2021, which identified four church services held at RRJ (generic "Church Service," Bible Study, Nation of Islam, and Jumah), and on which day of the week each service

---

[11] The statement of facts relies upon the allegations in the amended complaint and the non-disputed exhibits Beasley submitted in support of his original complaint. The Court does not require a *pro se* plaintiff to refile his exhibits. *Estelle*, 429 U.S. at 106 ("[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Haines*, 404 U.S. at 520-21)). "[I]f a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." (citing 2A Moore's Federal Practice, ¶ 10.06 at 10-24)).

was held. The Memorandum also indicated on which day of the week, and time, DVDs were available for three faiths: Nation of Islam, Jumah, and Destination Church. Dkt. No. 1-1.

3. A February 24, 2023 request by Beasley sought "to obtain a Circle Seven Koran plus[, he] was trying to get a kosh[er] diet [because he] follow[s] Morrish Science." Dkt. No. 1-6. Defendant Blackwell replied on February 27, 2023, stating that Beasley should "[p]lease contact your organization as none of the items that you requested are available. Please acknowledge that you may also purchase these items from Amazon (ONLY, No Bookstore Purchases). All material as must be soft cover, staple free and sent C/O Chaplain and they will be forwarded to you." *Id.*

4. On March 10, 2023, Beasley requested "the address for the Moorish Science Temple of America in either Richmond, VA or Washington, DC trying to obtain a Koran and study materials." Dkt. No. 1-7. Defendant Blackwell responded and sent Beasley the information requested less than five hours later. *Id.*

5. On March 20, 2023, Beasley requested "Moorish Science Temple of America materials," and complained that other religious groups "receive their materials but [he could not] receive none of" his. Dkt. No. 1-4. Defendant Blackwell responded that RRJ "does not buy religious materials. The materials [RRJ has] are donated from those religious organizations. You may consider contacting your organization or you may purchase them from Amazon. No Bookstore purchases, No hard cover or stapled materials. All materials should be sent [to] you C/O Chaplain." *Id.*[12]

---

[12] *See generally Moorish Science Temple of America* (https://www.moorishsciencetempleofamerica.org) (last viewed Aug. 21, 2025). The nearest Authorized Temple to Beasley while in was in RRJ custody was in Washington, D.C. The website did not list a Temple in Richmond, Virginia. A search on the Amazon website (searching "Moorish Science Temple of America") resulted in several pages related to MSTA. *See* Amazon (https://www.amazon.com/, search "Moorish Science Temple of America") (last viewed on Aug. 21, 2025). The first page had eighteen books about MSTA beliefs and history, including several

6. On May 5, 2023, Beasley filed an informal complaint, with a reference to "3- 25-23/8:00 pm" and alleged his RLUIPA and First Amendment rights were being violated due to "the denial of [his] religious materials." Dkt. No. 1-3.

7. On May 25, 2023, Defendant Blackwell, RRJ's Chaplain, responded that he "distributes materials to all inmates per request if available. Inmate Beasley [has] been advised to contact his religious organization for materials that are not available or purchase them per policy." *Id.* Defendant Blackwell's response also referenced the March 20, 2023 request and response.

8. On June 7, 2023, Beasley filed an informal complaint stating that RRJ was violating his RLUIPA and First Amendment rights because it was "denying [him] the right to practice [his] religious belief." Dkt. No. 1-9.

9. In a supplement to the informal complaint, addressed to Major Mack and dated June 15, 2024, Beasley stated that RRJ was denying him the right to practice his religion because he did not "receive a Holy Koran or religious materials for Moorish American service." Dkt. No. 1-11. Beasley's supplement quoted from the RRJ Handbook, page 11, in support of his complaint— "You have the right to freedom from discrimination, based on race, religion, natural origin, sex, handicap, or political beliefs. You have the right to protection from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment." *Id.* at 1.

10. Beasley admitted in the supplement that Defendant Blackwell had advised him that "if [he] want[ed] materials dealing with Moorish American religious, get in contact with a family member to have them order it from Amazon or contact a Temple and have them send [him] materials for [his] religious service." *Id.*

---

entitled "The Holy Koran." The subsequent pages included merchandise and non-religious publications about MSTA.

11. In his August 1, 2023, grievance (# 23-08-45691), Beasley complained that RRJ denied him the right to practice his religion in violation of his rights under RLUIPA and the First Amendment. Dkt. No. 1-13.

12. Defendant Blackwell responded on August 17, 2023, that Plaintiff had not "indic[ated] or pointed out how or in what manner his constitutional rights are violated," and that he had "discussed this matter with inmate Beasley several times about Moorish Science of America materials and it is noted on 3/20/23 OMS. Inmate Beasley is not being denied his right to practice his religion." Dkt. No. 1-13 at 1.[13]

13. Plaintiff appealed stating that he was "not satisfied with [Defendant Blackwell's] response." *Id.* at 4. On August 23, 2023, Major Mack responded that

> as stated in our conversation, the Holy Koran of the Moorish Science Temple of America is available free of charge on the tablet. Your religious rights have never been denied/violated. The Chaplain has made every effort to accommodate all of your requests. Also, with respect to holding services, you are free to do so in the same manner that every other religion is accorded.

*Id.*

### III. ANALYSIS

Defendants' motions to dismiss set forth several grounds to dismiss the Amended Complaint. For purposes of these motions, the Court will assume that Plaintiff is an adherent to the Moorish Science Temple of America ("MSTA") and that his belief in MSTA is sincere. However, the Defendants' arguments that neither defendant has done anything to deny him his

---

[13] The reference to OMS refers to a kiosk messaging system within RRJ. *See King v. Boyd,* No. 3:21cv352, 2023 WL 7726405, at *7 (E.D. Va. Nov. 15, 2023) ("All documents pertaining to the above process and medical requests are obtained in an electronic system called 'OMS.'. . . . A review of OMS shows that there is no record of King ever filing a grievance during his most recent detention in the Riverside Regional Jail."), *appeal dismissed*, 2024 WL 2763833 (4th Cir. Feb. 15, 2024); *see also Sams v. Armor Corr. Health Servs.*, 2020 U.S. Dist. LEXIS 181799, *11 (E.D. Va. Sept. 30, 2020) (inmate's sick call request was "through the Regional Jail's Offender Management System [OMS], an electronic communications system").

right to practice his religion, and that neither defendant has denied him the right to possess MSTA religious materials or hold MSTA services, are well taken and resolve the merits of the Amended Complaint. While Beasley alleges the Defendants denied him his rights, his argument is, in essence, that the Defendants/RRJ should *purchase* MSTA religious materials for him and that the Defendants/RRJ must *hire* "a chaplain trained in [Plaintiff's] Faith."[14]

### A. RLUIPA

Regarding Beasley's RLUIPA claim, his "only potential remedies under RLUIPA are equitable." *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014). A prisoner bringing a cause of action under RLUIPA is not entitled to money damages against state defendants in either their individual or official capacities. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011) (prohibiting damages claims against state officials in their official capacity); *Randleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (same for individual capacity). Here, Beasley's Amended Complaint only seeks monetary damages. Dkt. No. 15 at 6. Because the Court cannot grant this remedy for an RLUIPA claim, Beasley's RLUIPA claim suffers dismissal.

---

[14] In *Cruz v. Beto*, 405 U.S. 319 (1972), the Supreme Court reversed the dismissal of a complaint by a Buddhist prisoner that alleged he was denied the same opportunity as another prisoner to use the prison chapel, holding that if the prisoner "was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts, then there was palpable discrimination by the State against" the prisoner. *Id.* at 322. The *Cruz* Court, however, went on to clarify that it was not suggesting

> that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; *nor must a chaplain, priest, or minister be provided without regard to the extent of the demand*. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

*Id.* at 322 n.2 (emphasis added). Here, there are no allegations that any MSTA minister has ever requested or otherwise sought to visit RRJ during the time Beasley was confined there. Beasley has also not alleged that any MSTA materials were donated to RRJ.

8

Moreover, Beasley was transferred to the VDOC on February 6, 2025. Dkt. No. 30. The transfer renders Beasley's RLUIPA claim moot. *See Firewalker-Fields v. Lee*, 58 F.4th 104, 113-14 (4th Cir. 2023) (noting district court properly dismissed a RLUIPA claim because the inmate had been transferred from the regional jail to "the Virginia Department of Corrections" rendering "any injunctive relief and therefore any claim under RLUIPA" as "moot" (citing *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014)); *Rendelman v. Rouse*, 569 F.3d 182, 186-87 (4th Cir. 2009); *Mo. Kan. & Tex. Ry. v. Ferris*, 179 U.S. 602, 606 ("Moot questions require no answer.")). Thus, Beasley's RLUIPA claim will also be dismissed as moot.

### B. First Amendment

"To make a Free Exercise claim, a prisoner must first show, as a threshold matter, that a prison practice or regulation violates his Free Exercise rights before showing that the prison's policies are not 'reasonably related to legitimate penological interests.'" *Firewalker-Fields v. Lee*, 58 F.4th at 114 (quoting *Ali v. Dixon*, 912 F.2d 86, 89 (4th Cir. 1990)). The elements of a Free Exercise claim are (1) that a plaintiff hold a "sincere religious belief and (2) that his religious practice has been substantially burdened by the prison policy or practice." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Importantly, Beasley must also establish causation. *Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019) ("We have expressly held that § 1983 incorporates a causation requirement. And RLUIPA's text does as well." (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). If causation is lacking, then a "[Section] 1983 case fails as a matter of law." *Dixon v. Burke Cnty., Ga.*, 303 F.3d 1271, 1275 (11th Cir. 2002).

9

The only policy alleged in the amended complaint is the portion of the RRJ Handbook that states, in relevant part, that inmates have "the right to freedom from discrimination, based on race, religion, natural origin, sex, handicap, or political beliefs." Dkt. No. 1-11 at 1. On its face, the RRJ policy does not prohibit Beasley from obtaining or possessing MSTA religious materials or holding MSTA services. The conduct of the Defendants is consistent with that policy, and the Amended Complaint only alleges in a conclusory manner that each Defendant denied Plaintiff the right to obtain or possess MSTA religious materials or from holding MSTA services.

Moreover, Defendant Blackwell's motion, correctly, rejects Beasley's conclusory allegation against him because the purported denials of Beasley's First Amendment Free Exercise rights were not, in fact, denials. Defendant Blackwell's response, as well as the exhibits Beasley submitted, repeatedly explained to Beasley how he could obtain the religious materials he sought, and that he was free to hold MSTA services in the same manner as other groups at RRJ are accorded. Defendant Blackwell explained to Beasley on several occasions that he could purchase the materials via Amazon (soft cover and staple free) and have them sent to Beasley at RRJ, C/O Defendant Blackwell; and suggested that Beasley could also request family members purchase the materials for him. Additionally, Defendant Blackwell explained that Beasley could write to MSTA organizations and request materials from them. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 (9th Cir. 2011) ("Florer simply has not come forward with evidence to show that Defendants fostered or furthered any government policy that blocked him from obtaining religious materials or leadership from other sources." (citing *Cruz v. Beto*, 405 U.S. 319, 323 (1972) (Burger, C.J., concurring) ("There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, [religious] materials cannot be denied to prisoners if someone offers to

10

supply them.")))). Defendant Blackwell facilitated the latter method by providing Beasley with the MSTA address when Beasley requested it.

The First Amendment Free Exercise Clause, "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). However, federal law "*does not require a State to pay for an inmate's devotional accessories*." *Id.* at 720 n.8 (emphasis added) (citing *Charles v. Verhagen*, 348 F.3d 601, 605 (7th Cir. 2003) (providing that while the plaintiff could not be prevented from possessing Islamic prayer oil, the inmate was nevertheless held responsible for purchasing the oil)).[15] The Fourth Circuit recently echoed this point, in the context of RLUIPA, stating that "'RLUIPA does not require a State to pay for an inmate's devotional accessories' like holy books or prayer oils." *Pendleton v. Jividen*, 96 F.4th 652, 657 (4th Cir. 2024) (quoting *Cutter*, 544 U.S. at 720 n.8). Here, Plaintiff has not established the requisite causation requirement for either Defendant.[16] To the contrary, the record shows that RRJ personnel assisted, to the extent they could, Beasley in obtaining the religious materials he sought; but, as stated in *Cutter*, federal law "*does not require a State to pay for an inmate's devotional accessories*." 544 U.S. at 720 n.8 (emphasis added).

---

[15] *See, e.g.*, *Frank v. Terrell*, 858 F.2d 1090 (5th Cir. 1988) (rejecting claim of Jewish inmate that prison must provide him free religious books and materials); *Kaufman v. Schneiter*, 474 F. Supp. 2d 1014, 1026 (W.D. Wis. 2007) ("[P]rison officials are not required to locate, purchase or provide religious items for inmates[;] . . . [t]hey are required only to refrain from interfering with inmates' ability to locate, purchase and obtain such materials on their own . . . ." (citing *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002) ("[T]here is no constitutional entitlement to subsidy."))).

[16] There is a second causation issue regarding Defendant Leabough: there are no allegations that Leabough had any interaction with Plaintiff. "The doctrine of respondeat superior has no application under" [Section] 1983, and it 'require[s] proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation.'" *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995)).

Further, Defendant Blackwell's response to Plaintiff's March 20, 2023 kiosk message that other religious groups were "receiving their materials" but he was not receiving his materials further highlights that Plaintiff was not denied anything that RRJ had. Dkt. No. 1-4. Defendant Blackwell explained that RRJ did not "buy religious materials," and instead merely distributed materials that had been "*donated* from those [other] religious organizations." *Id.* (emphasis added). Beasley's reply to the motions to dismiss makes it clear that what he considers a denial is in fact a demand by him that he be provided with MSTA religious materials by RRJ at RRJ's expense. Beasley states Defendant Blackwell violated his rights under the First Amendment and RLUIPA because he did not "provid[e] proper religious materials or closed-circuit television/[DVDs]" for Beasley. Dkt. No. 40 at 3.[17] If Beasley wanted those items, Beasley had to find a way to pay for them or acquire the materials gratis from family members or MSTA.

### C. Equal Protection

Because Plaintiff mentioned "Equal Protection" in his original complaint, Dkt. No. 1 at 8, it is noted that in its prior Opinion, the Court advised what Plaintiff needed to allege to state an equal protection claim. Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to

---

[17] RRJ allows religious materials on DVDs to be played at specific times. Dkt. No. 1-1. The Memorandum Beasley submitted as an exhibit expressly states that RRJ shows DVDs of religious services "on the television in your pod." Dkt. No. 1-1. *See Asiatic Royalprince Allah v. Kiser*, 2021 WL 1207730, at *10 (W.D. Va. Mar. 30, 2021), *aff'd*, 2023 WL 2929682 (4th Cir. Apr. 13, 2023) (no RLUIPA violation for not showing NGE pre-recorded videos because "the institutional television system can only broadcast pre-recorded videos for religious groups, and [the prison did] not have any pre-recorded NGE videos because none have been donated"); *see also Coleman v. Governor of Mich.*, 413 F. App'x 866, 876 (6th Cir. 2011) (finding that policy limiting inmates in administrative segregation to basic television programming, as opposed to cable television programming, did not violate RLUIPA when they could receive religious literature via mail and could receive visitors to discuss their religious beliefs). The Amended Complaint does not allege that RRJ had or had been provided with any MSTA DVDs.

12

determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Dkt. No. 14 at 5 (citations omitted). Plaintiff, however, did not include an equal protection claim in his Amended Complaint, and it is therefore waived.[18] In any event, the equal protection claim has no merit.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (citations omitted). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In the prison context, "courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner," and the court "must determine whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 655, 656; *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)); *see Desper v. Clarke*, 1 F.4th 236, 248-49 (4th Cir. 2021) (quoting *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020)) (plaintiff "must also plausibly allege that 'the disparity was not justified under the appropriate level of scrutiny,' which, in the prison context, means that

---

[18] Plaintiff did raise equal protection in his reply to Defendant Blackwell's motion to dismiss, stating because Defendant Blackwell provided Bibles to Christians and Qurans to Muslims, and he did not provide MSTA materials to Plaintiff, "religious groups are treated unequally." Dkt. No. 35 at 1, 2. As explained *supra*, Plaintiff cannot amend his Amended Complaint in a responsive brief.

he 'must allege that the disparate treatment was not reasonably related to any legitimate penological interests'").

Here, Defendant Blackwell does not purchase religious materials for any prisoner religious group members; he simply distributes the religious materials donated to RRJ to inmates that ask for religious materials related to different religious denominations.[19] Beasley does not allege that Defendants Blackwell or Leabough denied him any donated religious materials; and the Defendants, or RRJ, did not have any duty to purchase religious materials for him.

### D. Grievances

To the extent Plaintiff alleges that any of the Defendants denied him his rights because they answered a grievance or denied the appeal of the grievance, he has not stated a claim. First, it is clear that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see Scott v. Kelly*, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000) ("It is well established that inmates do not have a constitutionally protected right to participate in a prison grievance procedure." (cleaned up)). Second, as indicated above, "[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff[']s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Consequently, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation"); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance,

---

[19] *See, e.g.*, *Firewalker-Fields*, 58 F.4th at 113 (4th Cir. 2023) (noting that the fact that "[t]he jail did not offer any Islamic services or classes . . . was due to the lack of any Muslim donations or volunteers"). As with religious materials, there is no indication or allegation that Beasley or anyone else provided MSTA DVDs that could be scheduled and shown like other religious groups did at RRJ.

by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" (citation omitted)).

## IV. CONCLUSION

For the reasons outlined above, Defendants' Motions to Dismiss, Dkt. Nos. 22 and 25, will be GRANTED through an Order that will be issued alongside this Memorandum Opinion.

Alexandria, Virginia
September 2, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge